## PACIFIC GAMBLE ROBINSON CO. v. MINNEAPOLIS & ST. L. RY. CO.

Civ. No. 3004.

United States District Court
D. Minnesota, Fourth Division.

April 27, 1949.

Perry R. Moore, of Minneapolis, Minn. (Stinchfield, Mackall, Crounse & Moore, of Minneapolis, Minn., of counsel), for plaintiff.

C. W. Wright, John C. De Mar, Richard Musenbrock and William J. Powell, all of Minneapolis, Minn., for defendant.

NORDBYE, Chief Judge.

Plaintiff wholesales and retails fresh fruits, vegetables, and groceries in Minneapolis, Minnesota, and other parts of the country. Defendant is a common carrier by rail subject to Part I of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and operates the only railroad switching facilities which serve plaintiff's Minneapolis plant and warehouse. Plaintiff has in its plant and warehouse quantities of perishable produce and various kinds of deteriorating groceries which it desires to move to other plants and warehouses for distribution to customers in other areas. Plaintiff has requested defendant to furnish refrigerator cars for transporting these goods to plaintiff's other warehouses and plants in interstate commerce to other states. But defendant has failed and refuses to do so, although other shippers in the market area in Minneapolis adjacent to plaintiff's plant are being furnished cars by the defendant. If the goods are not moved, they will spoil and be lost to plaintiff. Plaintiff desires to move substantially all of such goods from its Minneapolis warehouse and plant by railroad in interstate commerce.

Plaintiff now seeks a writ of mandamus or a mandatory injunction requiring defendant to furnish the requested cars. Section 1(4) of 49 U.S.C.A. provides:

"It shall be the duty of every common carrier subject to this chapter engaged in the transportation of passengers or property to provide and furnish such transportation upon reasonable request therefor, * * *."

Section 1(11) of 49 U.S.C.A., which also is contained in Part I of the Interstate Commerce Act, provides:

"It shall be the duty of every carrier by railroad subject to this chapter to furnish safe and adequate car service and to establish, observe, and enforce just and reasonable rules, regulations, and practices with respect to car service: and every unjust and unreasonable rule, regulation, and prac-

tice with respect to car service is prohibited and declared to be unlawful."

Section 23 of 49 U.S.C.A. provides a remedy. It declares:

"The district courts of the United States shall have jurisdiction upon the relation of any person or persons, firm, or corporation, alleging such violation by a common carrier, of any of the provisions of this chapter and chapters 8, 12, and 13 of this title, as prevents the relator from having interstate traffic moved by said common carrier at the same rates as are charged, or upon terms or conditions as favorable as those given by said common carrier for like traffic under similar conditions to any other shipper, to issue a writ or writs of mandamus against said common carrier, commanding such common carrier to move and transport the traffic, or to furnish cars or other facilities for transportation for the party applying for the writ: Provided, That if any question of fact as to the proper compensation to the common carrier for the service to be enforced by the writ is raised by the pleadings, the writ of peremptory mandamus may issue, notwithstanding such question of fact is undetermined, upon such terms as to security, payment of money into the court, or otherwise, as the court may think proper, pending the determination of the question of fact: Provided, That the remedy hereby given by writ of mandamus shall be cumulative, and shall not be held to exclude or interfere with other remedies provided by this chapter and chapters 8, 12, and 13 of this title."

Plaintiff contends that defendant has breached its duties under these statutes and asks the Court to compel defendant to recognize and perform those duties. Defendant argues that it is excused from performing carrier services for plaintiff because defendant's crews will refuse to spot cars on plaintiff's tracks or to pull them from plaintiff's tracks after they are loaded while certain groups of plaintiff's employees are on strike. Defendant declares that its employees fear physical injury from the strikers if they move cars to or from plaintiff's plant or warehouse. Defendant also argues that the matter is a question of dis-

crimination between shippers and should be submitted first to the Interstate Commerce Commission for decision. But the matter in question is not one exclusively for the Interstate Commerce Commission in the first instance. The matter is not a technical one upon which only the Commission can best express an opinion. The matter in reality concerns not discrimination, but defendant's duty to act as a common carrier. That Section 23 contemplates that court action may be taken in the first instance is apparent from the fact that the statute grants this Court jurisdiction in matters in which the carrier fails to provide car service. It does not contemplate that every case must first be referred to the Commission. If that were true, perishable goods would probably be lost before the Commission could act.

Defendant's defense that its crew will refuse to pull the cars or deliver cars for plaintiff unless the striking Union consents does not appear to relieve defendant of its duty upon the record here. The record here fails to sustain any claim of intimidation or threats to defendant's employees by plaintiff's strikers. Morrell, defendant's switch foreman of the crew which refused to move certain loaded cars without the striking Union's consent, testified that he only ordered the engine to proceed to the crossing near plaintiff's plant on March 29, 1949. That was the first time he decided not to enter plaintiff's plant to remove cars. The striking Union had previously ordered no interference with the train movements. Morrell testified that he left the engine to inquire of a group of men standing near the crossing if the "order" still was effective. He was informed that the order was no longer in effect, and that he should not proceed. No mention of trouble or injury was made as far as this record shows. Morrell then called his superior, who subsequently called a Mr. Carlson, general chairman of the defendant's switchmen's Union. On the morning of March 30th Carlson went to the striking Union's headquarters, and it appears that one of the Union's leaders agreed that defendant could pull out the two loaded cars from plaintiff's plant if it pulled out the

remaining empty cars on plaintiff's house track. Plaintiff had not ordered nor had it approved the removal of the empty cars. No threats were made to any members of the train crew in question. Carlson did testify that when the defendant's engine and crew approached the crossing to enter the plaintiff's property and pick up the cars on March 30th, a group of men present at the crossing near plaintiff's. building apparently raised questions among themselves about the movement. Carlson was near the crossing at that time to watch the movement of the train. But the strain quieted down when one of the Union's leaders informed them that the movement had been approved. Thereupon, the defendant's switch crew removed the two loaded cars and the empty cars from plaintiff's siding. Such testimony, standing alone, does not establish the danger of intimidation or threat of danger. And certainly this Court cannot, and will not, presume that men who represent themselves as responsible leaders of a responsible Union would advise or permit men whom they represent to commit irresponsible acts of intimidation or violence against men subject to an injunction which this Court stands ready to enforce. To presume such is to assume the irresponsibility of this Union which is now on strike and the lack of discipline within their ranks.

Moreover, on March 14, 1949, the State Court issued a restraining order enjoining the striking Union and certain named individuals, including named leaders of the Union, from interfering with the trackage at or adjacent to plaintiff's buildings or with plaintiff's merchandise about to be placed in transit in interstate commerce. The restraining order still is in effect. This Court cannot presume that the State Court will not enforce the injunction, or that the Union will not obey it, or that the City of Minneapolis, through its police department, is unable or unwilling to furnish all protection which may be required. The federal statutes provide for the imposition of severe penalties upon interfering in various ways with the movement of goods or trains in interstate commerce. 18 U.S. C.A. §§ 1951, 1991, 1992.

Defendant is not requested to perform the work of the striking truck drivers or of the employees who may load merchandise for shipment. Nor it is required to take part in the dispute. Its employees' Union is not an affiliate of the striking Union. Nor do its rules require recognition of the striking Union's picket line. Moreover, the striking Union must recognize that the duty which devolves upon a carrier's employees in interstate commerce is the performance of an indispensable quasi public service. And the laws of the United States require that it be performed. If the defendant carrier does not perform its duty under the law, it may be required to respond in substantial damages. Consequently, the fact that plaintiff is strike-bound does not relieve defendant of its common carrier duties to plaintiff in this case upon this record. Defendant cites Montgomery Ward & Co. v. Chicago, etc., Ry., 1947, 268 I.C.C. 257, and Montgomery Ward & Co. v. Consolidated Freightways, 1943, 42 M.C.C. 225. But Montgomery Ward & Co. v. Santa Fe Trail Transportation Co., 1943, 42 M.C.C. 212, reached a conclusion contrary to those cases because of the difference in facts, holding, at page 217, that a carrier's failure to serve a shipper is not necessarily justified by an employee's refusal to cross a picket line. The instant case, on the present record, is more akin to the Santa Fe case.

That a mandatory type of injunction can be issued by this Court in these types of cases seems free from doubt. Farmers Grain Co. v. Toledo, P. & W. R. R., 7 Cir., 1947, 158 F.2d 109; Toledo, A. A. & N. M. Ry. Co. v. Pa. Co., C.C., 54 F. 730; see also Vaughan v. John C. Winston Co., 10 Cir., 83 F.2d 370.

Under all the circumstances as disclosed by the showing made, plaintiff is entitled to the temporary mandatory injunction it seeks, and its motion for a temporary mandatory injunction is granted. Findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and an order granting a mandatory injunction may be presented. An exception is allowed.