## LOUISVILLE & N. R. CO. v. LOCAL UNION NO. 432 OF INTERNATIONAL WOODWORKERS OF AMERICA et al.

### Civ. A. No. 1094.

United States District Court, S. D. Alabama, S. D.

May 2, 1952.

Steiner, Crum & Baker, Montgomery, Ala., Charles B. Arendall, Jr., of Smith, Hand, Arendall & Bedsole, Mobile, Ala., for plaintiff.

Jerome A. Cooper, of Cooper, Mitch & Black, Birmingham, Ala., for defendants.

THOMAS, District Judge.

The ultimate question here is: Shall the defendants' motion to dismiss the bill of complaint and to dissolve the temporary restraining order be granted; or shall a preliminary injunction follow the temporary restraining order?

The situation out of which plaintiff's petition for injunctive relief grew is as follows:

Certain employees of T. R. Miller Mill Company, Inc., in Brewton, Alabama, were members of Local Union No. 432 of the International Woodworkers of America. Members of Local No. 432 have been engaged in a strike against the Mill Company since March 18, 1952, over provisions for a check-off in the union contract with the Mill Company. That Company has six plants in Brewton. It has its own spur track and switch engine.

---

The main line of the Louisville & Nashville Railroad Company runs through Brewton. An interchange track belonging to the Railroad leads off from the main line and connects with the spur track of T. R. Miller Mill Company. These tracks cross public streets in the town of Brewton. The Railroad's interchange track serves other shippers besides the T. R. Miller Mill Company.

From March 18 to April 14, picketing by Local 432 was confined to the Mill Company property. On the latter date, mass picketing by Local 432 began on the right of way of the Railroad Company along the interchange track. About 75 strikers congregated on the track just north of East Street Crossing in the City of Brewton and prevented employees of the Railroad from spotting empty cars on the interchange track, and also prevented the train crews from removing three loaded cars that had been placed on the interchange track by the Mill Company. Two of the latter cars were for interstate shipment and one for intrastate shipment, and on these cars bills of lading had been issued by the Railroad Company. To accomplish this interference, the pickets stood and sat on the tracks.

About 5:00 p. m. on the afternoon of the 14th, a string of ten or twelve freight cars was standing on the Railroad's interchange track in position for switching and movement by the Railroad. Somebody, other than the train crew, released four of these freight cars and, being on an incline, they were set in motion and began rolling rapidly down the track across two public streets, finally stopping some 600 feet inside the Mill Company's property, after a Mr. Roebuck, Traffic Manager of the Mill Company, jumped on one of the cars and applied a hand brake. Mr. Roebuck estimated there were some 200 people milling about, on and near the Railroad Company's tracks at the time.

That night (April 14) representatives of the three Railroad train crew unions (Locomotive Engineers, Railroad Trainmen, and Locomotive Firemen & Enginemen) arrived in Brewton to attempt to solve the difficulty. By invitation they attended a meeting of Local No. 432, and Henry T. Downing, Local Chairman for the Locomotive Engineers, made a talk in which he pointed out that the railroad unions had contracts with the Railroad and were obligated by such contracts to perform their duties, and suggested to members of Local No. 432 that they were going too far in stopping the operation of the Railroad Company's trains, and urged them to discontinue such action. The answer, delivered through the Secretary-Treasurer of Local No. 432, was in effect "No."

The next morning, the representatives of the Railroad unions went to the place where the box cars were awaiting switching and found a large number of people, men, women, and children, congregated there. Mr. Downing estimated there were about 200 or 250 of them. Many of them were standing on the flat cars and wood cars located on the Railroad's interchange track, and many others were standing on the track. While Mr. Downing was there, the Railroad's local freight proceeded northwardly along the passing track, just west of the interchange track, and made an effort to back into the interchange track to spot two flat cars on the interchange. A large number of people congregated around the switch point which joined the passing track and the interchange track, and prevented the train crew from switching into the interchange.

After making another fruitless effort to get Local No. 432 to move its members off the Railroad's property and tracks, the representatives of the Railroad unions left Brewton.

On April 16, some (estimated at 30 or 40) of the people mass-picketing along the Railroad right of way and tracks had clubs and sticks. Some few of the pickets along the Railroad near East Street on the morning of April 18 also had sticks and clubs.

Alleging these happenings by complaint and affidavits, plaintiff on April 19 filed its motion for a temporary restraining order, which was granted. And now, seeking a preliminary injunction, plaintiff reiterates the averments of its complaint and affida-

vits, having offered its affiants for cross-examination.

On the facts, defendants offered one witness. His testimony did not differ materially from that of plaintiff's witnesses. It was the opinion of Mr. O'Bannon, Financial Secretary for Local No. 432, that the maximum number of union people picketing on the Railroad interchange track at one time would be 75. He further testified that they did not picket the movements of cars to and from shippers or consignees other than T. R. Miller Mill Company; that neither the sheriff nor any of his officers came out and attempted to make arrests of any kind while the picketing was going on; that there were representatives of the Alabama Highway Patrol there, but that they did not try to make any arrests of any kind; that the Mayor of the city informed him it had been reported there was a group of men "up there" with clubs and he (the Mayor) asked Mr. O'Bannon to ask the men to lay those clubs to one side; that when he, O'Bannon, got back up there he saw two or three men on the outskirts of the crowd with sticks like a walking stick, and that he asked the men to lay the sticks aside, which they did.

After the restraining order was served, the picketing along the Railroad right of way ceased, and peaceful picketing of the Mill Company has continued.

Defendants contend

(1) That this case involves and grows out of a labor dispute within the meaning of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and plaintiff has failed to show that it is threatened with substantial and irreparable injury, and has failed to prove the other necessary averments for injunctive relief under that Act; and that the court is without jurisdiction under that Act to maintain the restraining order or to grant injunctive relief, because the terms of the Act have not been complied with.

(2) That plaintiff's remedy, if any, is under the National Labor Relations Act, as amended by Labor Management Relations Act of 1947, 29 U.S.C.A. § 151 et seq., under which this court has no jurisdicton to

proceed upon complaint of a private party for injunctive relief against a secondary boycott.

(3) That the bill of complaint contains insufficient allegations as to diversity of citizenship and amount in controversy.

The court finds:

(1) That the specific acts shown by plaintiff to have occurred, and the specific conditions shown to have existed, constituted a threat of immediate and irreparable injury, loss, or damage to plaintiff, from which threat plaintiff was entitled to the relief of a temporary restraining order.

(2) That the possible resumption of such occurrences and conditions constitutes a threat of immediate and irreparable injury, loss or damage to plaintiff from which threat plaintiff is entitled to the relief of a preliminary injunction.

The court concludes as a matter of law:

■ (1) The provisions of the National Labor Relations Act as amended in 1947, 29 U.S.C.A. § 151 et seq. are not applicable. Illinois Central R. Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Union Local 568, W.D.La.1950, 90 F.Supp. 640, pages 643–644.

(2) That the jurisdictional averments as to diversity of citizenship and amount in controversy are sufficient.

■ (3) That this case cannot be held to involve or grow out of a labor dispute as such cases are defined and classified under the Norris-LaGuardia Act. See Section 113(a), Title 29 U.S.C.A. The labor dispute is between the T. R. Miller Mill Company and Local No. 432. With that dispute, neither the Railroad nor this court is here concerned. " * * * the activities of defendants as against the railroad are indistinguishable from any other trespass." Illinois Central R. Co. v. International Brotherhood of Teamsters, etc., Union Local 568, supra [90 F.Supp. 645]. The appropriate order will be entered granting the motion for a preliminary injunction and overruling the defendants' motion to dismiss the bill of complaint.