**ERIE R. CO. et al.**

v.

**LOCAL 1286, INTERNATIONAL LONG-SHOREMEN'S ASS'N et al.**

Civ. No. 5983.

United States District Court,
W. D. New York.

Nov. 23, 1953.

Moot, Sprague, Marcy & Gulick, Buffalo, N. Y. (William G. Conable, Buffalo, N. Y., of counsel), for plaintiffs.

McMahon & Crotty, Buffalo, N. Y. (Peter J. Crotty, Buffalo, N. Y., of counsel), for defendants.

KNIGHT, Chief Judge.

The facts in the above entitled matter are not materially disputed. The defendants raise questions of law which will later be considered.

The Cooperative G. L. F. Exchange, Inc., operates a mill and elevator for the storage and processing of grain at 33 Ganson Street in the City of Buffalo. The plaintiffs are railroads operating in the City of Buffalo, New York, and are lessees of the Buffalo Creek Railroad, a primarily switching railroad, whose tracks are owned by the Buffalo Creek Railroad, a domestic corporation. The plaintiffs operate the Buffalo Creek Railroad as a joint venture. Ganson Street is a public street in the City of Buffalo. The tracks and yards of the Buffalo Creek Railroad extend to a point on the southerly side of Ganson Street. The siding tracks of the Cooperative G. L. F. Exchange, Inc., connect with the Buffalo Creek Railroad and extend across Ganson Street and on to the property of the G. L. F.

For many years freight cars moving products of G. L. F. have been moved to and from the premises of G. L. F. over these tracks in primary switching operations. The volume of such business is said to average at least 2,000 loaded cars monthly and in addition empty cars, unloaded by G. L. F., are moved away from the G. L. F. plant over the tracks leased to these plaintiffs and this particular business requires that one engine and crew be assigned to serve G. L. F. at all times when the mill is in operation. The Buffalo Creek Railroad is the only railroad serving G. L. F. and the continued operation of G. L. F. is largely dependent upon the availability of this railroad service. This service constitutes a large and profitable percentage of Buffalo Creek's business.

Some time on or about October 23, 1953, a labor dispute arose between G. L. F. and the defendant Local 1286, International Longshoremen's Association, and subsequently a considerable number of the members of that Union were discharged. The question of the violation of a contract entered into by Local 1286 with the G. L. F. arose and some time later the G. L. F. discharged all of the grain elevator employees. On October 23 a picket line of members of Local 1286 was posted by Local 1286 at the G. L. F. elevator and the picket line has continued to be posted until the time of the bringing of this suit. The picket line has been maintained across the siding tracks leading to the G. L. F. plant and elsewhere on Ganson Street sidewalk in front of the G. L. F. mill at the elevator. On November 9, 1953, the plaintiffs railroads assembled a string of freight cars for delivery over the railroad to the G. L. F. premises and attempted to push the cars across Ganson Street, through the gate and on to the G. L. F. premises. At that time pickets were marching back and fourth across the siding track where it crosses Ganson Street sidewalk and the cars were shoved to a point within a few feet of said pickets and these pickets refused to clear a path for their passage. Similar attempts were made to deliver cars on November 9, 1953, and other attempts, with the same result, were made on November 11, 1953. On the following day the Police Commissioner of the City of Buffalo personally directed police in an attempt to clear the track and on that occasion some fifty or sixty pickets had assembled. This attempt, under the direction of the Police Commissioner, did not substantially interfere with the pickets who were on the track. Thereafter some 25 policemen were called in and at that time trainmen refused to cross into the plant because of danger of injury to strikers who were continually crossing the tracks in front of the train. Subsequently, and on the last named date, officers of the Switchmen's Union of North America stated that the Union would oppose any further attempts to serve G. L. F. as long as the physical conditions remained unchanged. The plaintiffs have had crews available

to serve G. L. F. at all times subsequent to November 11, 1953, and it is made to appear that conditions so far as they relate to the action of the defendants' Union members are concerned have not been changed.

The officials of the G. L. F. have advised that they will be unable to continue operations in the mill unless they receive railroad service and that the loss by reason of that fact would amount to $4,000 a day.

What is the applicable law to such facts? The contentions of the defendants are these: (1) lack of Federal jurisdiction; (2) that the plaintiffs have such an "interest" in the labor dispute as brings them within the provisions of the Norris-La Guardia Act, 29 U.S.C.A. §§ 101–115, and, therefore, the complaint does not state a claim upon which relief can be granted.

These contentions will respectively be considered. Lack of jurisdiction is based on the ground that there is no diversity of citizenship since the Erie Railroad is a New York corporation and the Lehigh Valley Railroad is a Pennsylvania corporation; and further, it is not shown that the amount involved is enough to meet the statutory requirement. Neither one of these contentions is sustainable.

Title 28, sec. 1337, U.S.C.A. reads:

"The district courts shall have *original jurisdiction* of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 10 Cir., 193 F.2d 441; Turner, Dennis & Lowry Lumber Co. v. Chicago M. & St. P. Ry. Co., 271 U.S. 259, 261, 46 S.Ct. 530, 70 L.Ed. 934; Mulford v. Smith, 307 U.S. 38, 46, 59 S.Ct. 648, 83 L.Ed. 1092; Pocahontas Terminal Corp. v. Portland Bldg. & Const. Tr. Council, D.C., 93 F. Supp. 217; Louisville & N. R. R. Co. v. Rice, 247 U.S. 201, 38 S.Ct. 429, 62 L. Ed. 1071; Louisville & N. R. Co. v. Local Union No. 432, D.C., 104 F.Supp. 748.

These railroads are compelled by statute to render service to G. L. F., 49 U.S. C.A. § 1(4) and § 1(11), and they are liable to G. L. F. for any loss sustained by the failure to render service. Already G. L. F. has commenced suit to recover damages for such failure of service and that suit is pending. This suit is for an injunction to permit plaintiffs to meet their obligation. The question here posed has been decided in numerous comparable decisions of the court. A declaration directly in point is found in Toledo, Peoria & Western R. R. v. Brotherhood of Railway Trainmen, 7 Cir., 1942, 132 F.2d 265, 269. While this decision was reversed on other grounds, the Court there said:

"Congress having set up certain requirements which the carrier must meet, when others seek by violence to prevent it from meeting those statutory obligations, it should be permitted to seek protection in a court of equity of the sovereignty imposing the obligation."

Whether or not there was actual violence is not material. The result here is the same. In Montgomery Ward & Co. v. Northern Pacific Terminal Co. of Oregon, D.C.Or., decided June 30, 1953, plaintiff recovered damages for the failure of defendant to provide transportation of goods. The Court had this to say:

"But a common carrier bound to serve the public on nondiscriminatory terms is entitled to injunction to permit it to carry out its duties to a shipper against unlawful interference caused by concerted action of labor."

The court was pointing out that defendant might have escaped liability. Pacific Gamble Robinson Co. v. Minneapolis & St. Louis Ry. Co., D.C., 83 F. Supp. 860 is to the same effect. This opinion also cites numerous cases in point on the subject of jurisdiction.

In S. E. Overton Co. v. International Brotherhood of Teamsters, etc., D.C.W.

D.Mich., 1953, 115 F.Supp. 764, 768, the court said:

"28 U.S.C.A. § 1337 confers original jurisdiction on the district court 'of any civil action or proceeding arising under any Act of Congress regulating commerce'. Under this section of the Code the jurisdiction of the district court does not rest on the question of the amount involved or diversity of citizenship."

 This court has jurisdiction.

Does the complaint state a claim on which this action can be sustained? Do the plaintiffs have "an interest" such as brings it within the provisions of the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq. Holding that the court has jurisdiction is a sufficient answer in the negative. Here there is no labor dispute between plaintiffs and defendants. Pacific Gamble Robinson Co. v. Minneapolis & St. Louis Ry. Co., supra; Louisville & N. R. Co. v. Local Union No. 432, supra. In Pacific, Gamble, Robinson Co. v. Minneapolis & St. Louis Ry. Co., 85 F.Supp. 65, 67, the employees of the railroad, as intervenors, contended that the Norris-La Guardia Act prohibited an injunction. The court said in part:

"Interveners are not seeking to exercise any labor rights against plaintiff. They have no interest in plaintiff's labor policy. * * * Their actions are not in support of the plaintiff's employees. * * * Mere remote ecomomic interest * * * cannot furnish the required interest. If it did, then no end to the conception of labor disputes with respect to common carriers could be drawn logically."

The complaint states a claim on which the relief sought is granted, except as to defendant, Local 109, International Longshoremen's Association and David Connors its president. I do not think that there is sufficient showing now as to participation of the members of the Locals in the interfering with the movement of plaintiffs' trains.

The only case cited by defendants on the question of the applicability of the Norris-La Guardia Act is Schivera v. Long Island Lighting Co., 296 N.Y. 26, 69 N.E.2d 233. In that case the suit was to prevent picketing. The citation has no application for the reason that the picketing is not in issue here, nor does the complaint ask that the picket line be withdrawn.

Plaintiffs' motion for preliminary injunction is granted and defendants' motion to dismiss the complaint is denied.

Present order in accordance herewith.