GREAT NORTHERN RAILWAY COMPANY, a corporation, Plaintiff,

v.

LUMBER AND SAWMILL WORKERS, LOCAL UNION NO. 2409, a voluntary association and Labor Union, Helen M. Bouchey, individually and as President of said Labor Union, Doris M. Traynor, individually and as Recording Secretary of said Labor Union, Ray F. Lindberg, individually and as Financial Secretary of said Labor Union, Leona L. Stein and Joseph S. Bogard, Defendants.

Civ. No. 680.

United States District Court
D. Montana, Helena Division.

Oct. 6, 1955.

Weir, Gough & Matson, Helena, Mont., for plaintiff.

Leif Erickson and Charles V. Huppe, Helena, Mont., for defendants, with the exception of Helen M. Bouchey, who did not appear.

MURRAY, District Judge.

The plaintiff railway company brought this action against the Lumber and Sawmill Workers, Local Union No. 2409, and various named individuals as officers of said Union.

It appears from the complaint in the first cause of action that the defendant Lumber and Sawmill Workers Union is now and for some time in the past has been engaged in a strike against a concern called Foley's Mill & Cabinet Works, operating in Helena, Montana. The plaintiff railway company has a switch track and siding leading into the plant of Foley's Mill & Cabinet Works. Just before this switch track enters the premises of Foley's Mill & Cabinet Works, it crosses a public street in Helena, Montana, known as Roberts Street, and the complaint alleges that the defendant Union, its officers, agents and employees, together with the individual defendants and numerous other persons, "have con-

certed and are concerting to, and have, and do, with intent to wilfully and unlawfully prevent plaintiff from crossing said Roberts Street with cars and motive power for delivery to, and receiving from Foley's Mill & Cabinet Works, property to be delivered or shipped in interstate commerce to or from Foley's Mill & Cabinet Works, situated on plaintiff's railroad, westerly from said Roberts Street crossing. That said concerted action, so wilfully and unlawfully persisted in by defendants, and their said associates, consists in their occupying and blocking plaintiff's right of way with their bodies at said crossing and west thereof, between said crossing and said Foley's Mill & Cabinet Works, and in close formation moving back and forth on and across plaintiff's said railroad in such manner that one or more of defendants, their agents and associates are, at all times, wilfully, wrongfully and unlawfully in the path of the railroad cars or motors used by plaintiff in attempting to spot railroad cars to receive shipment from, and deliver shipments to said Foley's Mill & Cabinet Works, in interstate commerce as such common carrier; and the said conduct of defendants is done and persisted in by defendants with the purpose and intent on their part of wrongfully and unlawfully delaying, interfering with and preventing plaintiff from delivering to, and receiving property from said Foley's Mill & Cabinet Works for shipment in interstate commerce on plaintiff's said railroad."

The complaint further alleges that the plaintiff, as a common carrier, is required under penalty of law to promptly deliver to and receive from said Foley's Mill & Cabinet Works at Helena, Montana, such shipments of property as are offered to it. Further that because of defendants said actions the one switch crew employed by plaintiff at Helena, Montana, "because of their labor union obligations, have invariably refused to spot cars billed to and to receive cars billed by said Foley's Mill & Cabinet Works", and that it has been necessary

for the plaintiff to bring from Great Falls, Montana, to Helena, Montana, three supervisory officials of said railroad company to deliver cars to and pick up cars from said Foley's Mill & Cabinet Works, and that in the years 1954 and 1955 this bringing of supervisory officials from Great Falls, Montana, to Helena, Montana, to furnish service to Foley's Mill & Cabinet Works has cost the plaintiff in money between $4,800 and $5,500. It is further alleged that when said supervisory officials man the switch engine of the plaintiff, it has been necessary for plaintiff to call upon the Helena City police to come to said Roberts Street crossing and remove the defendants, their agents and employees from plaintiff's railroad tracks to enable such crew of supervisory officials, handling plaintiff's switch motor over said crossing, to enter the plant of Foley's Mill & Cabinet Works, for the delivery and receipt of such shipments.

In the first cause of action plaintiff prayed for a temporary and permanent injunction restraining the defendants from picketing the plant of Foley's Mill & Cabinet Works on Roberts Street where the switch track of the plaintiff crosses in entering said plant. The second cause of action, repeating the same allegations as the first cause of action, asks damages from the defendants in the sum of $5,500 for the additional cost it has incurred in serving Foley's Mill & Cabinet Works and for its cost of suit.

And order to show cause was issued and set for hearing, at which time the defendants filed a motion to dismiss.

The motion to dismiss the first cause of action was based upon two grounds: first, that the Court lacks jurisdiction to issue the preliminary injunction prayed for because the action involves a labor dispute within the provisions of 29 U.S.C.A. Chapter 6, § 101 et seq., Norris-LaGuardia Act, and 29 U.S.C.A. § 52, Clayton Act, and second, that the complaint fails to state a claim against defendants upon which relief can be granted. The motion to dismiss also moves to dismiss the second cause of action on

the grounds that the cause of action fails to state a claim against defendants upon which relief can be granted.

The motion to dismiss was presented at the time of the hearing on the order to show cause why a preliminary injunction should not be granted, and only the motion to dismiss directed to the first cause of action was argued, and only that part of the motion will be considered in this order.

There is a considerable conflict in the authorities as to whether or not the situation presented by this case constitutes a "labor dispute" within the meaning of the Norris-LaGuardia Act and the Clayton Act. It is clear that if such a "labor dispute" is involved in this proceeding, the complaint is insufficient to warrant the Court issuing an injunction, especially under Section 7 of the Norris-La-Guardia Act, Title 29 U.S.C.A. § 107, because none of the procedural requirements contained in that section are complied with.

However, it appears to the Court to be unnecessary to decide whether or not the controversy between the defendants and the plaintiff in this case constitutes a labor dispute under the provisions of the Norris-LaGuardia Act, because even if the Norris-LaGuardia Act and the Clayton Act do not apply in this case, the complaint is still insufficient, under general law relating to injunctions to warrant the issuance of an injunction as prayed for.

From the allegations of the complaint, all of which, for the purposes of this motion, the Court must accept as true, the Court is unable to find that plaintiff has suffered, or will suffer any irreparable injury as a result of the picketing of Foley's Mill & Cabinet Works by the defendants. The complaint shows that plaintiff has at all times been able to pick up from and make deliveries to the struck plant, albeit at extra cost. However, this extra cost apparently is simple of ascertainment as it has been alleged in the complaint, and if the extra cost has been imposed upon plaintiff by the wrongful conduct of the defendants, or any other parties, plaintiff may recover its damages in an action at law. In these circumstances an injunction will not lie.

Judge Bourquin in the case of Great Northern R. Co. v. Local Great Falls Lodge of International Ass'n of Machinists, No. 287, D.C., 283 F. 557, set forth clearly and concisely the considerations governing issuance of injunctions. While it is true that Judge Bourquin was speaking in that case after the case had been tried and all the evidence was in, his statement applies equally to this case where the Court, for the purpose of the motion to dismiss, accepts as true all of the allegations of fact in the complaint.

Judge Bourquin said in that case, 283 F. at page 563:

"It is emphasized that the principles applicable to injunctions are the same in controversies between employers and employees as in any others. Injunctions go only in cases of urgent necessity, made to appear by competent, material, credible, and preponderating evidence, to guard against injuries, not merely feared by the applicant, but reasonably to be apprehended, and likely to be irreparable. They are extraordinary remedies, granted with great caution, and in the exercise of sound judicial discretion. *That the applicant is annoyed, threatened, and injured will never justify a court to grant him an injunction, unless these trespasses are so great that they threaten him with irreparable injury, within the settled meaning of that term in equity.*

\* \* \* \* \* \*

"These controversies [strikes] inevitably present provocative situations, and may involve fugitive encounters and disorders, for which neither party may be solely responsible. *Often trivial, they do not threaten irreparable injury, and so do not warrant interposition by a court of equity, but can be adequately remedied by appeal to local authority.* It may be, as contended,

that near election time local administrations are disposed to neglect duty in the premises and to 'play politics.' But for that matter national administrations are likewise. It is of the price, as of the vice, of democracies. Nevertheless, injunctions go only in the circumstances aforesaid, and not merely to bridge gaps of administrative dereliction."

It is to be noted there is no neglect of duty by the local authorities in this case. On the contrary, the complaint shows on its face that the Helena police have been answering any request made of them by plaintiff and handling any situation which arises.

 Also, before a Court will grant an injunction, it should appear with reasonable certainty that the injunction will be effective to prevent the damage which it seeks to prevent. From the allegations of the complaint here, it is extremely doubtful that an injunction would alleviate plaintiff's difficulty at all. The only damage which plaintiff has alleged in its complaint consists of the increased costs incurred by it in bringing supervisory personnel from Great Falls to Helena to man its switch engine. It appears from the face of the complaint that this extra expense is incurred not because of any illegal picketing of defendants, but for the reason that the employees of plaintiff, in the words of the complaint, "because of their union obligations, have invariably refused to spot cars billed to and to receive cars billed by said Foley's Mill & Cabinet Works". In other words, from the complaint it appears that plaintiff's regular train crew refuses to spot cars billed to and received from the struck plant, not because of the physical presence of pickets on the right of way, but only because of the existence of a picket line. The Court does not have, and plaintiff does not contend the Court has, the right to enjoin all picketing at the Roberts Street crossing where plaintiff's tracks enter Foley's Mill & Cabinet Works. Thus, if the Court were to enjoin only the physical blocking of plaintiff's right of way by

the defendants, which would be the extent of the Court's power, in any event, the Court cannot see that plaintiff's condition would be bettered. Its regular employees, apparently from the allegations of the complaint, would still have their "labor union obligations" and would still refuse to cross the picket line, which would still leave plaintiff faced with the necessity of bringing supervisory employees from Great Falls at increased expense.

It is appropriate at this point to express the Court's disapproval of the conduct of the pickets, if it is as alleged in the complaint, of physically blocking the plaintiff's right of way with their bodies. This conduct goes beyond legal picketing and from the facts alleged in the complaint appears to be unnecessary from the defendants' viewpoint, since, as mentioned above, it appears the regular employees of plaintiff are disposed to honor a legal picket line because of their own labor union obligations; and the defendants would be well advised to conduct their picketing in a lawful manner.

The Court's holding that the first cause of action fails to state a cause of action for an injunction is founded upon still another ground. When the case was first presented, and after the arguments in support of, and opposition to, the motion to dismiss, the Court devoted some considerable study to the problem of whether or not this suit came under the provisions of the Norris-LaGuardia Act.

All of the Federal decisions, with one exception, which the Court found holding that the Norris-LaGuardia Act did not apply, and that an injunction could be granted, in the circumstances presented by the case at bar, were lower court decisions. Illinois Cent. R. Co. v. International Brotherhood of Teamsters, etc., Union Local 568, D.C., 90 F.Supp. 640; Louisville & N. R. Co. v. Local Union 432 of International Woodworkers of America, D.C., 104 F.Supp. 748; Erie R. Co. v. Local 1286, Intern. Longshoremen's Ass'n, D.C., 117 F.Supp. 157; Montgomery Ward & Co., Inc., v. Northern Pac. Terminal Co. of Oregon, D.C.,

128 F.Supp. 475. The one exception is the Tenth Circuit Court case of Smotherman v. United States, 186 F.2d 676, wherein a conviction of Smotherman for contempt for violating an injunction was affirmed. However, that case did not rule upon the question of whether the Norris-LaGuardia Act applied, and simply holds that whether the act applied or not, the Court's injunction was an "outstanding and unreversed" order of the Court, the violation of which constituted contempt.

This Court finds it difficult to reconcile the holdings of the above mentioned cases, that the Norris-LaGuardia Act did not apply in those cases, with the decision of the Supreme Court of the United States in New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 707, 82 L.Ed. 1012. In that case, the Supreme Court said:

> "The legislative history of the act [Norris-LaGuardia Act] demonstrates that it was the purpose of the Congress further to extend the prohibitions of the Clayton Act respecting the exercise of jurisdiction by federal courts and to obviate the results of the judicial construction of that act. It was intended that peaceful and orderly dissemination of information by those defined as persons interested in a labor dispute concerning 'terms and conditions of employment' in an industry or a plant or a place of business should be lawful; that, short of fraud, breach of the peace, violence, or conduct otherwise unlawful, those having a direct or indirect interest in such terms and conditions of employment should be at liberty to advertise and disseminate facts and information with respect to terms and conditions of employment, and peacefully to persuade others to concur in their views respecting an employer's practices. The District Court erred in not complying with the provisions of the act."

In this broad, sweeping statement, the Supreme Court seems to this Court to be saying that in any case where a dispute concerning terms and conditions of employment exists, the terms of the Norris-LaGuardia Act apply; that persons interested in said dispute have an unqualified right to legally advertise and disseminate facts and information concerning the dispute; and that if they proceed illegally to advertise and disseminate the information concerning the dispute, the procedures outlined in the Act must be followed to prevent the continuation of the illegal conduct.

This holding of the Supreme Court seems to have not been considered in any of the District Court cases above referred to. From a study of those cases, the only basis which this Court can find for the possible validity of those decisions is suggested by Judge Fee in Montgomery Ward & Co., Inc., v. Northern Pacific Terminal Co. of Oregon, supra. In that case, Judge Fee holds that the duty of a common carrier to perform its duties to the public is paramount and transcends any other consideration, even the national labor policy as announced in the Clayton and Norris-LaGuardia Acts, and suggests that despite the latter Acts, an injunction would lie to enable a common carrier to perform its duty to the public. If this ground suggested by Judge Fee for holding the Norris-LaGuardia Act, inapplicable in a situation such as presented by the case at bar, is valid, it would not stand up in this case, because on its face, the complaint shows plaintiff has not been prevented from performing its duty of delivering to, and picking up shipments from Foley's Mill & Cabinet Works, but on the contrary, this service to Foley's Mill & Cabinet Works has been and is being performed.

For the foregoing reasons,

It Is Ordered and this does order that the motion to dismiss the first cause of action of plaintiff's complaint be, and the same hereby is granted, and said first cause of action is hereby ordered dismissed.

It Is Further Ordered and this does order that within 20 days after receipt

of a copy of this order, defendants serve and file a memorandum of authorities in support of their motion to dismiss the second cause of action of plaintiff's complaint, and that plaintiff, within 20 days after service upon it of defendants' memorandum of authorities, serve and file its memorandum of authorities in opposition to said motion to dismiss.

It Is Further Ordered that the Clerk of this court forthwith notify the attorneys of record for the respective parties of the making of this order.