**62**

In the Matter of Nicholas **FABIJANIC**, as President of Engineers Union, International Union of Electrical, Radio & Machine Workers, AFL–CIO, Petitioner,

v.

**SPERRY GYROSCOPE DIVISION** and Sperry Systems Management Division of Sperry Division, Sperry Rand Corporation, Respondents.

**No. 72 Civ. 1426–LFM.**

United States District Court,
S. D. New York.

Jan. 31, 1974.

Vladeck, Elias, Vladeck & Lewis, Everett E. Lewis, New York City, for petitioner.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for respondents; Herbert Prashker, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Petitioner Nicholas Fabijanic, president of Engineers Union, International Union of Electrical, Radio and Machine Workers, AFL–CIO ("Union"), seeks an order, pursuant to 28 U.S.C. §§ 4, 6, compelling Sperry Gyroscope Division ("Gyro") and Sperry Systems Management Division ("Systems") of Sperry Rand Corporation to arbitrate a grievance. The grievance allegedly arises under a collective bargaining agreement dated June 5, 1970.*

Systems and Gyro have their headquarters and principal place of business

---

* Originally, the Union also sought an order directing the implementation of a grievance settlement on the grounds that the employer defaulted by failing to arbitrate. The Union now concedes, however, that this is not for the court to decide but rather for an arbitrator in the event arbitration is ordered by the court.

in Great Neck, N. Y. These two divisions employ approximately 1,200 engineers between them. Each is a separate division of Sperry Rand Corporation, having its own general manager and employees, although sharing a building complex and a personnel office with the other.

Sperry Space Support ("Space Support") is another separate division of Sperry Rand Corporation. It has its headquarters in Huntsville, Alabama.

The Union entered into a collective bargaining agreement with Systems and Gyro, effective June 5, 1970. The agreement provided for arbitration of "all disputes, differences and grievances which may arise out of this Agreement, including claims arising out of breaches or threatened breaches or violations or threatened violations of this Agreement . . . . ."

Article 1 of the agreement states that the agreement applies to "all plants now operated by the employer, its successors and assigns, wherever situated." It further provides that if any nonsupervisory employees within the Union bargaining unit "are transferred to a location other than a plant now operated by the employer, any additional personnel hired at such location to work with such transferred employees in bargaining unit jobs" shall be covered by the agreement.

In April 1971, Sperry Rand Corporation organized the Sperry Division to function as a "corporate umbrella" over Systems, Gyro, Space Support and other divisions of Sperry Rand Corporation. Each of these divisions, however, retained its independence, maintaining its own management, and, except for Systems and Gyro, negotiating its own collective bargaining agreements. The agreement between the Union and Systems and Gyro was not changed upon the formation of the Sperry Division.

From March 1969 until January 1972, Systems had a series of contracts with the United States Department of Transportation and the National Aeronautical and Space Agency ("NASA") for various phases of the National Data Buoy Project. During 1971, the government moved the Data Buoy Project office from Washington, D.C., to NASA's Mississippi Test Facility ("MTF") in Bay St. Louis, Mississippi. Systems transferred a group of engineers from the Great Neck plant to the MTF to continue to work on the Data Buoy Project. Work on the project also continued at the Great Neck plant.

The engineers at MTF continued to be employed by Systems and covered by its collective bargaining agreement. Additional engineers were hired at the MTF, and they, too, were treated as covered by the agreement, as required by Article 1.

The last in the series of Systems' contracts for the National Data Buoy Project terminated on January 31, 1972. Systems attempted to obtain a contract for work on subsequent stages of the project but was unsuccessful because its high overhead rate was rejected by the government.

Systems suggested to Space Support that since Space Support had a lower overhead rate, it might be successful in obtaining the contract. Systems did this with the expectation that Space Support would subcontract part of the work back to Systems. Space Support successfully negotiated the contract and, as expected, subcontracted some work to Systems for performance at Systems' Great Neck plant.

Since Space Support was going to take over operations at the MTF, Systems' employees there were given an option. They could either transfer back to Systems' Great Neck plant or terminate their employment with Systems and be rehired by Space Support to continue work on the Data Buoy Project as Space Support employees. Space Support made it clear that those accepting employment with Space Support would no longer be covered by Systems' agreement with the Union.

A few of Systems' employees chose to accept the Space Support offer, but most returned to the Great Neck plant.

Space Support then hired additional engineers and transferred engineers from other locations to the MTF. Less than one-third of the engineers at the MTF are former Systems' employees, and the Space Support engineers at the MTF are only a very small fraction of Space Support's 500 engineers, none of whom are represented by a union.

In January 1972, the Union filed a grievance under the collective bargaining agreement, claiming that the "Employer has violated the labor agreement by refusing to continue to apply the labor agreement to those employees located at the Mississippi Test Facility, Mississippi." Systems and Gyro declined to arbitrate the grievance, claiming that, since the employees at the MTF were no longer employed by either Systems or Gyro, the agreement did not cover them.

The Union then filed an unfair labor practice charge against Gyro and Systems. The Regional Director and General Counsel of the National Labor Relations Board refused to issue a complaint. We agree with their decisions and, therefore, refuse to compel arbitration.

■■ We recognize that an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" and that all "doubts should be resolved in favor of coverage." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 582–583, 80 S.Ct. 1343, 1353, 4 L.Ed.2d 1403 (1960). In the very same case, however, the Court noted that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. American Mfg. Co., *supra*, 363 U.S. at 582, 80 S.Ct. at 1353.

Here, the parties did not agree to submit this dispute to arbitration, and we can say with "positive assurance" that this dispute is not covered by the arbitration clause of the agreement.

After Systems' employees were transferred to the MTF, the agreement was applied to them and all those later hired to work at the MTF, as required by Article 1. Article 1, however, cannot be interpreted to cover employees who terminated their employment with Systems and were rehired by another autonomous entity.

■■ The agreement is clearly between the Union and Systems and Gyro. Nowhere in the agreement is Space Support mentioned. Although both Systems and Space Support are subdivisions of the Sperry Division of Sperry Rand Corporation, they function as separate and autonomous employers. Each has its own independent labor policies.

There is no evidence here of what the Union terms "a corporate shell game." After good faith negotiations, Systems' efforts to obtain the new Data Buoy Project contract failed. Systems' efforts encouraging Space Support to seek the contract were based on a desire to receive subcontracts and not motivated by any anti-Union animus.

When Space Support offered employment to former Systems employees, it was made clear to them that they would no longer by employed by Systems nor covered by Systems' agreement. Rather, like Space Support's other 500 engineers, they would not have any union representation. In light of this full disclosure, they, nevertheless, chose to accept employment with Space Support, and, since they are no longer employees of either Systems or Gyro, the agreement with the Union cannot be said to cover them.

The agreement provides that for a grievance to be arbitrable, it must "arise out of this Agreement." Since the grievance here cannot be said to arise out of the agreement, it is not arbitrable.

Accordingly, we deny petitioner's motion to compel arbitration and the proceeding is dismissed.

So ordered.