**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Jack C. ROBINSON, d/b/a Robinson Freight Lines, Respondent.**

**No. 12928.**

United States Court of Appeals Sixth Circuit.

Jan. 7, 1958.

Fannie M. Boyls, Washington, D. C., Theophil C. Kammholz, Marcel Mallet-Prevost, and Ruth V. Reel, Washington, D. C., on the brief, for petitioner.

Thomas W. Thomson, Knoxville, Tenn., Creekmore, Buhl & Thomson, Knoxville, Tenn., on the brief, for respondent.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

PER CURIAM.

Petitioner prays for enforcement of its decision and order finding that respondent violated Section 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(1, 3), and ordering that respondent reinstate five employees without loss of pay or seniority rights and make whole two other employees for loss of pay.

Respondent operates a motor transportation business in Tennessee under franchise from the Public Utilities Commission of that state. Respondent does not cross state lines but moves freight across Tennessee for interstate haulers as a link in interstate commerce. During the period involved Local 621 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (AFL) operated under a collective bargaining contract with respondent. No previous history of hos-

tility toward the union was shown. In July, 1954, the union and respondent disagreed as to the interpretation of the bargaining contract under which respondent had laid off two employees. The controversy was handled as a grievance but, while grievance proceedings were carried out on both sides, the matter was deadlocked. Early in October, 1954, the union struck respondent's operation in Knoxville, Tennessee, in order to compel respondent to accept its interpretation of the contract. The strike lasted only seven hours, as a state court enjoined the strike. The strike was renewed on October 18, the injunction being dissolved, and was abandoned on December 10, 1954.

Early in the second strike some of the employees requested respondent's local manager to come to the home of one of the strikers for the purpose of lending the strikers some money. Six strikers were present and respondent's manager loaned each of them $20, repaid later by payroll deductions. Respondent then sent the strikers a letter notifying them that they had been temporarily replaced and that, unless they reported for work by Monday November 15, they would be permanently replaced.[1]

The trial examiner found that the letter was a violation of Section 8 (a) (1) and that the loaning of the money violated the same section. The Board, we think rightly, disagreed with these conclusions. The letter was in no sense a violation of the statute. It simply stated respondent's legal position, that it was entitled to make employment replacements to take over the positions of the strikers. Cf. National Labor Relations Board v. Mackay Radio & Telegraph Company, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381. As to the loan, since the proposition to borrow the money was made by the strikers themselves, since no hostility to the union on the part of respondent had been shown and loans had previously been made by respondent to employees when they were in financial difficulties, the finding of the Board on this point is sustained upon the evidence considered as a whole.

The Board however, found that the refusal to reinstate certain employees who applied for employment when the strike was abandoned was a violation of Section 8(a) (3) and 8(a) (1) of the Act. This decision was correct.

This was an economic strike in which respondent was entitled to hire permanent replacements and was compelled to reinstate only so many strikers as there were vacant places to be filled at the termination of the strike. National Labor Relations Board v. Mackay Radio & Telegraph Company, supra, 304 U.S. 345, 58 S.Ct. 910. Cf. Hamilton v. National Labor Relations Board, 6 Cir., 160 F.2d 465, certiorari denied 332 U.S. 762, 68 S.Ct. 65, 92 L.Ed. 348.

When the strike terminated only nine strikers had been reemployed and seven vacancies still existed. Seven strikers applied for work with respondent between December 13 and December 15, 1954. As shown by the record, new men were employed by respondent to fill all of the vacancies subsequent to application of the strikers for reinstatement. The strikers were presented with application blanks which all refused to sign. Respondent contends therefore that it was not compelled to reinstate them. It asserts that the applications were presented to the men because the Interstate Commerce Commission some six months previously had instructed respondent to secure written applications for employment. However, respondent admitted that previously it had not tendered such applications to any but new employees. Also, fifteen of the sixteen strikers performed a purely local service, hauling and delivering goods in Knoxville, Tennessee. Only one was an "over-the-road man."

The application is not included in the record. Whether in express terms it deprives the men of their rights as old employees together with seniority and

---

1. The letter is printed in full in the Board's decision, 114 N.L.R.B. 162.

other rights, does not appear. However, when it was presented to each of the strikers respondent's manager stated that this was a "new application." In view of this and respondent's testimony that it had never before presented such an application to an old employee, and also that the local haulers were not formerly required to sign applications, the men had reason to believe that their status as old employees, together with their seniority rights, would be affected by the application and their refusal to sign it was justified. Since the company in the past had presented applications only to new employees and the applications here involved were designated as new applications, the company should have explained the effect of such change in the procedure. The burden did not rest upon the employees to ascertain what the effect of the signing would be. Cf. National Labor Relations Board v. Port Gibson Veneer & Box Co., 5 Cir., 167 F.2d 144, certiorari denied 335 U.S. 819, 69 S.Ct. 41, 93 L.Ed. 374.

Subsequent to the filing of petition for enforcement of the Board's order this court granted leave to adduce additional evidence with reference to an agreement dated April 8, 1955, between respondent and Local Union 621 and other unions and remanded the case to the Board for that purpose. A supplemental hearing was held in which the Board issued a supplemental decision adhering to its original decision and order.

▪ The agreement between respondent and the local unions involved constituted a settlement of the issues between respondent and Local Union No. 621, which had filed the original charge. The Board was vested with discretion to refuse to allow the charges against respondent to be withdrawn, National Labor Relations Board v. Hekman Furniture Company, 6 Cir., 207 F.2d 561, 562, and its discretion was not abused.

The petition for enforcement will be granted as prayed.

McALLISTER, Circuit Judge (dissenting).

I am of the view that the respondent was not guilty of an unfair labor practice in presenting application blanks to the workers when they applied for work after the strike terminated. The circumstance that they were told that it was a new application does not, in itself, mean, or imply, that the workers were to lose their seniority upon signing applications and accepting re-employment. As to the statement by respondent that it was a new application, it was, in fact, a new application, in that the Interstate Commerce Commission had previously instructed respondent to secure written applications for employment in the future. The fact that such applications had, up to that time, only been tendered to new employees, does not indicate that old employees signing them, would lose any of their previously acquired rights. If there was any question in the minds of the employees to whom such application blanks were submitted for signature as to whether their signature would result in loss of seniority, or more onerous conditions of employment, the natural thing for them to have done would be to ask whether the signing of such an application meant loss of seniority or any disadvantage. For an employee to refuse to sign and to walk away without giving any reason for such action does not convict the respondent of an unfair labor practice. There was no reason for any employees to conclude that the presentation of such an application for signature was made with the purpose of stripping them of any of their seniority rights. Respondent's record with his employees had been unusually generous. He had repeatedly loaned them money while they were on strike against him. If they were going to claim that the mere presentation of the application forms was unfair to them, they should have so stated at the time, and given the reasons, rather than walking away in silence. I am, therefore, of the opinion that the order of the Board should not be enforced.