NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CORNING GLASS WORKS, Respondent.

No. 5790.

United States Court of Appeals
First Circuit.

July 28, 1961.

Judith Bleich Kahn, Attorney, Washington, D. C., with whom Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Assistant General Counsel, and Melvin J. Welles, Attorney, Washington, D. C., were on brief, for petitioner.

W. D. Armour, Pittsburgh, Pa., with whom Nicholas Unkovic and Reed, Smith, Shaw & McClay, Pittsburgh, Pa., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

In August 1959 some of the employees of Owens-Corning Fiberglas Corp., hereinafter called Fiberglas, a corporation doing business in Rhode Island, (having no material relationship to the present respondent, Corning Glass Works, another corporation doing business in Rhode Island), engaged in an economic strike which lasted for a number of weeks. The elected spokesmen for the employees, one Kabbaze and another, received considerable newspaper and other publicity. Not only was the strike unsuccessful, but Kabbaze was replaced. In September he applied for employment with the respondent, which was taking on temporary help because of an unusual emergency. Kabbaze was a member of the American Flintglass Union, hereinafter "Flints," which for many years had had an agree-

ment with respondent. Kabbaze's application was refused, which ultimately led to a charge of violation of sections 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1, 3).

Kabbaze had applied to the respondent along with a number of others. They were told that there were no jobs at that particular moment, but to come back. Kabbaze, however, remained behind with a friend who had previously been accepted and had reported to take a physical. He asked his friend to say a good word for him to White, respondent's personnel manager. As a result White spoke with Kabbaze about employment. He did not, however, employ him. Kabbaze testified that White told him that because of his strike activities he would have a rough time getting a job anywhere, that even union people would be "leery" of him, and that he, White, would be criticized by his superiors for hiring a "trouble-maker." At the hearing before the trial examiner, White denied any specific recollection of what he said, but admitted that he might have made remarks to this general effect. He testified, however, that his reason for not accepting Kabbaze was that Kabbaze's attempt to take advantage of other applicants by hanging around suggested that he was "sneaky" and "kind of a cagey wise guy." But White added that he usually did not give reasons for refusing employment that would hurt an applicant's feelings, and so may have suggested the other matter as a reason. The trial examiner concluded that White's real reason for refusing employment was Kabbaze's strike activities. All of the findings were affirmed by the Board, which entered an order with which we will deal later.

If this had been the entire evidence we would have a routine case. Phelps Dodge Corp. v. N. L. R. B., 1941, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271. However, the undisputed testimony shows that for nearly twenty years respondent's relationship with "Flints" has been excellent. The union's international vice-president testified that not only had White (who had been with respondent fourteen years) always been "very cooperative," but that respondent "in general is very friendly and sympathetic and cooperative." Grievances had always been disposed of at lowest levels, and there never had been any work stoppages. Not only was there this long and favorable history, described by the examiner as "the best of relations between management and labor," but it was undisputed that at the very time Kabbaze was refused employment, White accepted a number of other Fiberglas strikers, known to him to be such, whose pictures had also been in the newspapers and who had daily been seen in the picket lines. This evidence is highly probative. N. L. R. B. v. Chronicle Publishing Co., 7 Cir., 1956, 230 F.2d 543. Doubtless it was this history which caused the examiner to find that neither White by his conduct nor the respondent "had any intention of discouraging membership in the Union or its local."[1] Nonetheless, in spite of this the examiner concluded to judge respondent by its actual remarks, and not by its alleged undisclosed intent.

We cannot disagree. We agree with the principle underlying Chronicle Publishing Co. that where an employer's conduct admits of a number of inferences, the Board must ascertain his true motive. The effect of his conduct is not dependent upon the particular inference drawn by the employee. But this does not mean that an employer can not be held for natural consequences of unambiguous statements.[2] The Board was justified in ac-

1. The examiner also agreed that Kabbaze's method of obtaining an interview at the expense of other applicants was "somewhat of a 'sharp' move."

2. See Radio Officers' Union, etc. v. N. L. R. B., 1954, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455; Summit Mining Corp. v. N. L. R. B., 3 Cir., 1958, 260 F.2d 894. The objective standard has prevailed even where employers were mistaken about a significant fact. N. L. R. B. v. Industrial Cotton Mills, 4 Cir., 1953, 208 F.2d 87, 45 A.L.R.2d 880; Salt River Valley Water Users' Ass'n v. N. L. R. B., 9 Cir.,

cepting respondent's announced reason at its face value.

■ This, however, does not dispose of the matter. The question is, exactly what was the violation. Even though White's statements be taken on their face, they cannot be divorced from respondent's admitted recognition and acceptance of the union even to the point of hiring other members who had participated, though less actively, in the Fiberglas strike. It seems clear that the nature of respondent's discrimination against Kabbaze was not based on his union membership, but was because of his special "trouble-making" activities. With an undisputed entrenched union, we do not see how the overall effect of this could be to discourage "membership" in the union, section 8(a)(3); it serves rather to deter the full and free exercise of employees' rights, section 8(a)(1). N. L. R. B. v. J. I. Case Co., 8 Cir., 1952, 198 F.2d 919.[3] No fewer persons would join the union for this reason, but individual members might be more restrained in their behavior. The finding of a violation of section 8(a)(3), and the reference in the Board's order to "discouraging membership" in Flints, "or any other labor organization," [4] was inappropriate. The order should be limited to section 8

(a)(1). Because the case must be remanded anyway, we will not rephrase it.

■■ Respondent normally hires 12 to 15 employees a year. At the time in question, due to emergency business, it was hiring 125 "temporary" employees. There is nothing in the record before us to suggest how long Kabbaze would have retained his employment had his application been accepted, except White's testimony that the job was expected to be for "two weeks" or "a short while." This affords no basis for an order a year or more later requiring the offer of employment. We recognize and approve of the practice of issuing a general order that a discriminatee be made whole financially, with the dollar amount to be determined later, but the ordering of present employment when all that was lost was a temporary job now presumably long over is something else. The Board should either show that the job would have continued, or phrase its order in terms that the discriminatee shall now be employed only if this would have been the effect of his original employment.[5] N. L. R. B. v. R. K. Baking Corp., 2 Cir., 1959, 273 F.2d 407.

A decree will be entered setting aside the order of the Board and remanding the case to it for further proceedings not inconsistent with this opinion.

1953, 206 F.2d 325; N. L. R. B. v. Whitin Machine Works, 1 Cir., 1953, 204 F.2d 883; Cusano v. N. L. R. B., 3 Cir., 1951, 190 F.2d 898. But compare Rubin Bros. Footwear, Inc. v. N. L. R. B., 5 Cir., 1953, 203 F.2d 486; N. L. R. B. v. Office Towel Supply Co., 2 Cir., 1953, 201 F. 2d 838. It has also prevailed where the employer has been caught between competing unions, one of which has demanded the discharge of nonmembers. N. L. R. B. v. Glueck Brewing Co., 8 Cir., 1944, 144 F.2d 847; N. L. R. B. v. Hudson Motor Car Co., 6 Cir., 1942, 128 F. 2d 528.

3. We recognize that some cases on somewhat similar, though less pointed facts, have not drawn this distinction. Cf. N. L. R. B. v. Mackay Radio & Telegraph Co., 1938, 304 U.S. 333, 58 S.Ct. 904, 82 L. Ed. 1381; N. L. R. B. v. Robinson, 6 Cir., 1958, 251 F.2d 639. In the Mackay case much larger principles were being decided for the first time, and there is no

indication that this relatively small matter was specifically considered. Nor was it discussed in Robinson, or any other case we have found except J. I. Case Co.

4. Any basis for this latter clause seems peculiarly absent where the single union of which Kabbaze was a member was fully recognized by respondent and there was no other union even in the offing. Communications Workers, etc. v. N. L. R. B., 1960, 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896. We are becoming tired of telling the Board that we will not issue comprehensive orders in the absence of grounds. N. L. R. B. v. International Molded Plastics of Puerto Rico, 1 Cir., 1960, 283 F.2d 26, 29.

5. We do not construe that meaning to be the one intended by the presently proposed language, "Offer Kabbaze the same, or substantially equivalent job * * *." If we are wrong in this, our criticism of this part of the order is limited to its lack of clarity.