No. 13325

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

LOCAL 2390 OF AMERICAN FEDERATION OF STATE
COUNTY, MUNICIPAL EMPLOYEES, A.F.L. - C.I.O.
and Mrs. Ruth Ware,

Plaintiffs and Respondents,

-vs-

CITY OF BILLINGS, MONTANA, a quasi-municipal
corporation,

Defendant and Cross Complainant and
Respondent

ROBERT M. COOKINGHAM, and BRUCE L. ENNIS, DUANE
SMITH, ROXANE LEE, WALT LESNIAK, NANCY LeCAPTAIN,
as members of the BOARD OF TRUSTEES OF THE BILLINGS
CITY LIBRARY,

Defendants and Cross Defendants and
Appellants.

---

Appeal from:   District Court of the Thirteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Crowley, Haughey, Hanson, Gallagher & Toole,
Billings, Montana
Robert Edd Lee argued, Billings, Montana

For Respondents:

Rosemary Boschert argued, Billings, Montana
Jones, Olsen and Christensen, Billings, Montana
Frank C. Richter argued, Billings, Montana

---

Submitted:   September 10, 1976

Decided OCT 22 1976

Filed: OCT 22 1976

Thomas J. Kearney
                                Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from the district court of Yellowstone County. The Union and Mrs. Ware instituted the action against the City of Billings. The district court ordered that the trustees of the Billings Public Library be made parties. The City cross-claimed against the trustees, who then counterclaimed against the City. The case was submitted to the district court on the following stipulated facts:

Respondent, Ruth Ware, was terminated from her job at the Billings City Library on September 10, 1974, by the library director with the approval of the appellants, the board of trustees of the Billings City Library. On September 26, 1974, the Billings City personnel director directed the appellants to reinstate Ruth Ware, however the appellants refused to comply with his directive. At this time a valid collective bargaining agreement existed between the respondent Union and the City of Billings, hereinafter referred to as the City. The termination of Ruth Ware conflicted with the terms of this agreement. The union had been established as the exclusive bargaining agent for the city employees in an election January 20, 1972, in which Ruth Ware participated. On April 8, 1974, the Board of Personnel Appeals made an appropriate unit determination of city employees, which included the library personnel. At the time of her termination, Ruth Ware was a dues paying member of the union. The appellants alleged that the agreement between the City and the union was not binding upon the appellants, because they had neither negotiated it nor ratified it. However, the district court held contrary to this position, and entered two judgments, one in favor of the union and Ruth Ware against the City and the appellants, the other in favor of the City on a cross-complaint, against the appellants. Appellants appeal both judgments.

The only issue determinative of this appeal is whether Ruth Ware's "public employer", within the meaning of the Collective Bargaining For Public Employees Act, sections 59-1601 et seq., R.C.M. 1947, was the City or the appellants. In the latter situation, the agreement would not be binding on the appellants, since a separate and autonomous employer cannot be bound to a contract he has neither negotiated or ratified. Fabijanic v. Sperry Gyroscope Division, 370 F.Supp. 62 (1974). On the other hand, should her "public employer" be the City, the appellants are bound by the agreement.

The appellants contend that they are the "public employer" of Ruth Ware by way of section 44-223, R.C.M. 1947, which states:

> " * * * With recommendation of the chief li-
> brarian the board shall employ and discharge
> such other persons as may be necessary in the
> administration of the affairs of the library,
> fix and pay their salaries and compensation
> and prescribe their duties."

This is the first time we have been asked to define "public employer" within the meaning of the Collective Bargaining For Public Employees Act. The Act grants the right of collective bargaining to public employers and public employees in much the same manner as the Labor Management Relations Act, 1947, 29 USCA §141 et seq., does to employers and employees in the private sector. For this reason, we adopt the doctrine established by the United States Supreme Court to define such terms, as set forth in National Labor Rel. Bd. v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L Ed 1170, 1183:

> " * * * In this light, the broad language of
> the Act's definitions, which in terms reject con-
> ventional limitations on such conceptions as
> 'employee,' 'employer,' and 'labor dispute,'
> leaves no doubt that its applicability is to be
> determined broadly, in doubtful situations, by
> underlying economic facts rather than technically
> and exclusively by previously established legal
> classifications."

To properly define "public employer" we must appreciate

- 3 -

the economic realities as well as the aims of the legislature sought by the Collective Bargaining For Public Employees Act and the Library Systems Act, sections 44-212, et seq., R.C.M. 1947, and reconcile any differences if possible.

We cannot limit our examination of the legislative intent of the Library Systems Act to the section cited by the appellants, but we must consider the entire Act. When so analyzed the library and its board of trustees is not a wholly independent and autonomous entity separate and apart from the local governing body. The local governing body and its electors decide whether to create a library (section 44-219, R.C.M. 1947); the mayor appoints the members of the board of trustees (section 44-221, R.C.M. 1947); the local governing body establishes the levy, with certain limitations, for a special tax on the property owners to create a library fund (section 44-220, R.C.M. 1947); the governing body decides whether to issue bonds for the erection and building of library buildings and the purchase of land therefor (section 44-220, R.C.M. 1947); the board of trustees must submit an annual financial statement to the local governing body and also an annual budget indicating what support and maintenance will be required from public funds (section 44-222, R.C.M. 1947); the treasurer of the city handles the library fund in accord with the orders and warrants of the board of trustees (section 44-220, R.C.M. 1947); and the local governing body may create a library depreciation reserve fund from moneys allocated to the library during the year but not expended by the end of that year, and invest such moneys (sections 44-230, 44-231, R.C.M. 1947). Considering the entire scheme of the Library Systems Act, the board of trustees of the Billings City Library is granted independent powers to manage and operate the library, but they are still an adjunct of the local government, the City of Billings.

The same answer to this unique issue was reached by New Jersey in Board of Trustees of the Free Pub. Lib. v. Union City, 112 N.J.Super. 484, 271 A.2d 728 . The New Jersey Court based its decision upon various facets of interdependence in their legislative scheme, which is very similar to ours.

The economic realities show that the City, not the board of library trustees, ultimately provides the salaries and wages of the library personnel. The City has a substantial legitimate interest in the operation of the library, which qualifies the City as the "public employer" of the Billings City Library personnel, including Ruth Ware.

We hold there is no inconsistency between the Library Systems Act and the Collective Bargaining for Public Employees Act. Under the Library Systems Act, as a whole, the board of trustees is given independent powers to manage and operate the library. However, this does not qualify the Board as a "public employer" within the meaning of the Collective Bargaining For Public Employees Act, but merely as "supervisory employees" as defined in section 59-1602(3), R.C.M. 1947.

Finding the City to be the "public employer" of Ruth Ware, we also find the collective bargaining agreement between the City and the union was binding upon the appellants.

The judgments of the district court are affirmed.

_____
Chief Justice

- 5 -

We concur:

_John Conway Harrison_
Justice

_Peter G. Meloy_
Hon. Peter G. Meloy, District
Judge, sitting in place of Mr.
Justice Frank I. Haswell.


Mr. Justice Wesley Castles did not participate in this Opinion.