No. 13753

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

WESTERN BANK OF BILLINGS,

Petitioner and Appellant,

-vs-

THE MONTANA STATE BANKING BOARD and
the PROPOSED RIMROCK BANK OF BILLINGS,

Respondents and Respondents.

---

Appeal from: District Court of the First Judicial District,
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Berger, Anderson, Sinclair & Murphy, Billings, Montana
Arnold Berger argued, Billings, Montana

For Respondents:

Crowley, Haughey, Hansen, Toole and Dietrich, Billings,
 Montana
George Dalthorp argued, Billings, Montana
James H. Wood argued, Helena, Montana

---

Submitted: September 19,1977

Decided: NOV -1 1977.

Filed: NOV -1 1977

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court:

This is an appeal from the judgment of the district court, Lewis and Clark County, affirming the decision of the respondent Montana State Banking Board (Board) granting a certificate of authorization to respondent Rimrock Bank of Billings (Rimrock) for a new bank in Billings, Montana. Appellant is the Western Bank of Billings (Western), the nearest existing bank to Rimrock's location and the only protestant to appear at the hearing.

In early February 1976, an application was presented to the Board seeking a certificate of authorization to organize a new Montana bank to be called the Rimrock Bank of Billings and to be located in the western part of Billings. The application consisted of the basic application form provided by the Board and completed by the applicant, together with 11 exhibits attached thereto. When the application was received by the Board, the applicant was notified of certain delinquencies therein. After correction the Board filed the application and scheduled a hearing thereon for March 29, 1976. The Board gave notice of the hearing as required by law to all financial institutions within 100 miles of the location of the proposed bank. Letters of protest were filed by two or three banks, but only Western appeared in opposition to the application at the hearing. At the time set for commencement of the hearing, Western filed a motion to deny the application as insufficient as a matter of law, or, in the alternative, to vacate the hearing and grant the applicant 60 days to cure the alleged deficiencies in the application. The Board took the motion under advisement

and proceeded with the hearing. Both motions were later denied.

The hearing lasted for two and one-half days. Rimrock and Western presented documentary evidence as well as oral testimony. Both exercised their rights of cross-examination. The Board allowed Western to submit additional evidence in the form of exhibits approximately one month after the hearing.

The Board issued an order granting Rimrock's application on August 3, 1976. Western appealed from the order and the district court, Lewis and Clark County, affirmed the Board's decision on January 3, 1977.

Findings of fact made by the Board and not challenged by Western include the following background information:

Rimrock will be located in an area which has experienced rapid and substantial residential and commercial growth over the past five years and the evidence indicates that continued significant growth is likely in the future. The primary service area of the bank increased in population from about 20,000 in 1970 to over 25,000 in 1975 and evidence indicates the population in the area will continue to grow. In the fall of 1975, there were approximately 254 businesses in the primary service area and by the time of the hearing in March 1976, that number had increased to 293. The bank will be loca ted near a regional shopping center which opened on September 11, 1975, called the Rimrock Mall. At the time of the hearing there were 50 businesses in operation in the Rimrock Mall and it was projected that within one year there would be approximately 50 additional businesses and business type offices open in the area. Gross sales for businesses in the Rimrock Mall complex are projected to be $24,000,000 for the year 1976 and $32,000,000

for the year 1977. Evidence indicated that future development in the general area of the Rimrock Mall is likely. Rimrock can reasonably be expected at the end of the first full three years of operation to have achieved a deposit volume of $5.5 million and to show net operating earnings.

Western assigns nine issues for review which we consolidate into three principal issues:

1. Was Rimrock's application, as filed, sufficient to allow the Board to proceed with the hearing?

2. Does the record contain sufficient evidence to support the conclusions of the Board and the district court?

3. Were the regulations under which the Board proceeded legally adopted?

The essence of the first issue (encompassing Western's first four basic issues presented for review) is whether Rimrock's application as filed was sufficient to allow the Board to proceed with the hearing. Western argues the application was totally devoid of any "evidence that existing banks in the area were falling short of offering adequate services to all deserving bank customers in the area" as required by the Montana Administrative Code (MAC) 8-3.22(6)-S1000(d), then in effect. Therefore, argues Western, the Board should not have gone ahead with the hearing and should not have issued the certificate of authorization for the new bank.

Western's contention is tantamount to saying that the slightest defect in the application at the time of the administrative hearing, deprives the Board of jurisdiction to proceed with the hearing. We have found no law and have been cited none giving any support to that premise. To the contrary is

- 4 -

Columbine State Bank v. Banking Board, Colo.App.1973, 505 P. 2d 391, where the court rather summarily dealt with a similar contention, holding that the jurisdiction of the Board was not lost by a failure to provide all required information in the application. See: Wyoming Bancorporation v. Bonham, Wyo. 1974, 527 P.2d 432; American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 90 S.Ct. 1288, 25 L ed 2d 547.

The application contains a great deal of detailed information as required by the regulations. It had been accepted by the Department of Business Regulations as conforming to its requirements and thereupon filed. Western concedes that the application complied with every section and subsection of the regulations except one. Western remained silent as to this alleged defect until it filed its motion to dismiss the application or to continue the hearing at a time when the Board, counsel for all parties, numerous witnesses, and the reporter were assembled in Helena for the purpose of commencing the hearing. Rimrock then offered to amend its application to remedy the alleged defect while maintaining the application was sufficient. The Board took the motion under advisement and proceeded with the hearing. At the end of the hearing, Rimrock moved to amend the application to conform to the evidence. The Board took this motion under advisement also, and ultimately denied all motions, ruling that the application was adequate as filed and therefore no amendments were necessary.

Applications in administrative proceedings are roughly analogous to pleadings in civil actions. Many authorities hold that technical rules of pleadings such as sometimes govern civil or criminal actions are not applicable to pleading or applications filed with administrative agencies. See: Community of

- 5 -

Woodston v. State Corporation Commission, 186 Kan. 747,
353 P.2d 206 (1960). Professor Davis in his writings on
administrative law emphasizes the unimportance of pleading in
the administrative process and states that the important
thing is that the parties affected by orders of an adminis-
trative body be fully heard. Davis, Administrative Law Text,
3rd Ed. 1972, §8.02, pp. 196,197. See Also: 2 Am Jur 2d
Administrative Law, §§ 370,371, pp. 179,180.

Should the pleadings in an administrative proceeding be
construed by stricter standards than pleadings in civil liti-
gation? Rule 8(f), Montana Rules of Civil Procedure, provides:

"All pleadings shall be so construed as to do
substantial justice."

We hold that pleadings and applications in an administrative
matter should also be construed as to do substantial justice.

Assuming, for the moment, that the application failed to
contain evidence on one specific point, that existing banks
in the area were falling short of providing adequate services,
as alleged by Western, it is appropriate to inquire as to
whether substantial rights of Western were prejudiced thereby.
Section 82-4216(7), R.C.M. 1947. In Martello v. Darlow and
Lovely, 151 Mont. 232, 236, 441 P.2d 175 (1968), it is stated:

"* * * On appeal, prejudice is never presumed but
it must affirmatively appear that the error has
affected a substantial right of the party on the
merits of the case. (Conway v. Fabian, 108 Mont.
287, 89 P.2d 1022.)"

Western contends it was denied rights of discovery by
reason of the failure of the application to contain any evidence
on the point. Western did not, however, at any stage of the
proceedings point out how further discovery would have assisted
it in rebutting adverse evidence presented at the hearing. More-
over the evidence most damaging to Western on the question of

the adequacy of its services was the testimony of its own president, Lawrence F. Walton. Western has never suggested to the Board or to the courts what further evidence it could have or would have presented on this issue. We note that subsequent to the hearing, Western asked and was granted the right to submit additional evidence on another point, but offered no new evidence on this issue. We fail to see where Western has been prejudiced, even if the application omitted evidence on the one point as alleged.

We hold the application was sufficient to give the Board jurisdiction to proceed with the hearing.

The Board and the district court found that the application as filed satisfied the requirements of the regulations. While it is not necessary to this decision in view of our holdings above, we will discuss this issue.

Section 5-611, R.C.M. 1947, prescribes the statutory minimum standards under which an application for a new bank is to be determined and requires the Board to adopt appropriate rules to that end. Section 5-611, provides:

> "Rules adopted by board--new banks. The board shall adopt rules necessary for the administration of this act in accordance with the Montana Administrative Procedure Act [82-4201 to 82-4225].
>
> "In particular, the board shall adopt rules concerning the authorization of new banks. Such rules shall contain minimum standards under which an application for a new bank shall be determined including the following:
>
> "(1) a persuasive showing that there is a reasonable public necessity and demand for a new bank at the proposed location;
>
> "(2) that the bank will be owned and managed by persons of good moral character and financial integrity, and will be safely and soundly operated;

"(3) a persuasive showing that the new bank will have a sufficient volume of business to assure solvency and that establishment of the new bank will be in the public interest."

Pursuant to the statutory mandate, the Board adopted rules setting forth a number of requirements for applications including the specification that it contain "(c) evidence demonstrating a persuasive showing of public necessity and demand as required by Rule 8-3.22(6)-S1000". MAC § 8-3.22(2)-P2230. Rule 8-3.22(6)-S1000 provided in part:

"8-3.22(6)-S1000 <u>PERSUASIVE SHOWING OF REASONABLE PUBLIC NECESSITY AND DEMAND.</u>

"(1) The applicants for authority to organize a new bank must present to the Board exhibits, research data, and detailed projections to make a persuasive showing that there is a reasonable necessity and demand for a new bank at the proposed location. Such information shall include but not be limited to:

"* * *

"(d) Evidence that existing banks in the area are falling short of offering adequate services to all deserving bank customers in the area."

Rule 8-3.22(6)-S1000 appears to require that <u>evidence</u> be contained in the application itself. The statute, section 5.611, contains no such requirement, stating only that the Board should adopt rules containing "minimum standards under which an application for a new bank shall be determined". This tends to infer that such evidence if presented at a hearing rather than in the application itself would be sufficient. The regulation listing the specific items (S1000) states merely that the applicant must present the specific information to the Board without specifying that it be in the application itself. Rimrock suggests the Board may not have intended to require that the evidence itself be contained in the application, and if it did, the regulation was beyond the statutory authority therefor. In view of our conclusions, it is unnecessary to determine these issues.

- 8 -

Rimrock contends that the application does, indeed, contain evidence which by inference tends to show that existing banks in the area, particularly Western, were falling short of offering adequate service to all deserving bank customers. We take note of the basic application which contains a projection of the volume of business Rimrock might expect at the end of its first three years in business and the exhibit attached to the application, which is an economic feasibility study prepared by Rimrock's expert, Dean C. Coddington, of the research firm of Bickert, Browne, Coddington & Associates, Inc. of Denver, Colorado. We summarize Rimrock's arguments on this issue:

1. The application states that Western is the only commercial bank in the proposed institution's primary service area containing about 25,000 people. The feasibility study states that Western had not grown rapidly and had a low rate of market penetration in its area. From these facts the deduction follows that Western is falling short of offering adequate services to all deserving customers in the area. In other words, if Western were offering adequate services to all deserving customers, it would have had a greater market penetration and would have grown considerably faster.

2. The fact that Western is the only commercial bank in an area containing some 25,000 people shows a lack of local area competition for the bank. Lack of competition may not be conducive to good banking services, and that combined with the slow growth rate tends to indicate a failure to offer services which the great majority of banking customers in the area considers adequate, or at least attractive enough to motivate them to bank there.

3. The feasibility study contains this comment:

"Western Bank of Billings is the only commercial
bank in the proposed institution's primary service
area. Western Bank opened in 1970 and, with $5.5
million in September 1975 deposits, this bank has
not grown rapidly. This is partially attributable
to capitalization problems prior to opening, owner-
ship changes, and a relatively unattractive banking
facility * * *."

At the hearing evidence was presented through Western's
witnesses of continuing capitalization problems resulting
in Western's inability to ameliorate its drive-in problems,
enlarge its parking lot, and maintain an adequate supply
of safety deposit boxes because of the statutory limit on
capital investment in ratio to the bank's capital structure.
Evidence at the hearing also illustrated how ownership changes
of Western resulted in an unfavorable attitude in the
community, discouraging deserving customers in the area from
using the bank.

4. The application projects that within three years
Rimrock would have deposits of $5.5 million and would have
net profits in the third year of operation. This projected
success tends to indicate that other banks may not be offering
adequate services to all deserving customers or a new bank
would not be so popular.

5. The application shows that the nearest downtown
Billings bank is nearly four miles through city streets from
Rimrock's location. The other banks are therefore not in a
location adequate to serve all deserving bank customers in
the area. Testimony at the hearing illustrated how important
it is for small businessmen and some housewives to have banking
facilities in a convenient location.

Without weighing the merits of any particular one of these points, we hold the Board and the district court were not in error in finding that the application as filed satisfied the requirements of the regulations.

The second principal issue presented for review relates to whether the record contains sufficient evidence to support the conclusion of the Board and the district court.

Section 82-4216, R.C.M. 1947, provides for judicial review of agency action and so far as it relates to the sufficiency of the evidence provides:

> "(7) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. * * * The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> "* * *
>
> "(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record * * *."

This Court has repeatedly held that its function on appeal is to determine whether there is substantial evidence in the record to support the judgment. Strong v. Williams, 154 Mont. 65, 460 P.2d 90 (1969).

Western makes no general challenge to the sufficiency of the evidence to fulfill the minimum statutory standards contained in section 5-611, under which an application for a new bank is to be determined. It does challenge the sufficiency of the evidence presented, even at the hearing, to indicate the inadequacy of services to the area of other banks. However the testimony of Western's president, without more, is sufficient as to its own deficiencies in service. With respect to other banks, the testimony as to the distances involved and

the difficulties in reaching them through city traffic constitutes substantial evidence. We find no merit in Western's contentions as to the sufficiency of evidence.

Western also objected to the testimony of Rimrock's expert witness, Dean C. Coddington, and to the admissibility of the feasibility study prepared by him. We note that Western concedes that Mr. Coddington was educationally and professionally qualified to conduct a feasibility study and to express an opinion thereon, but contends that some of the facts upon which he based his opinion were inaccurate or inadequate. We conclude that whatever merit any particular point of attack may have, the attacks go to the weight of the evidence rather than to the admissibility of either the testimony or the study. We also note that the record contains a great deal of evidence from other witnesses which tends to corroborate the factual basis for Mr. Coddington's testimony.

We find the evidence presented amply fulfills each and every one of the statutory and regulatory requirements for a new bank.

The third principal issue on appeal concerns Western's challenge to the legality of the regulations under which the Board proceeded on the grounds they were adopted without a hearing, and,therefore, Western contends the Board did not have jurisdiction to entertain the application of Rimrock or any other proposed bank. The circumstances were that after the Board published notice of its intent to adopt MAC Rule 8-3.22(6)-S1000 in 1973, it received a petition requesting a public hearing on the proposed rules. Section 82-4204, R.C.M. 1947, provides in pertinent part:

"Prior to the adoption, amendment or repeal of any rule, the agency shall:

"(a) Give written notice of its intended action.
* * *.
"(b) Afford interested persons fourteen (14) days to submit data, views or arguments, orally or in writing. In the case of substantive rules, opportunity for oral hearing shall be granted if requested by either ten per cent (10%) or twenty-five (25) of the persons who will be directly affected by the proposed rule * * *."

The petition requesting the hearing contained 27 signatures without any recitation that any of the persons signing would be directly affected by the proposed rule. Investigation by the Board revealed that 16 of the signatories were connected with the First Citizens Bank of Billings and it was undetermined what interests, if any, the remaining signatories had in the proposed rules. The Board therefore rejected the form on the grounds that it was not a qualified petition and so notified the president of the First Citizens Bank, one of the signers. In his letter to the president, the Director of the Department of Business Regulations explained in detail the Board's reasons for adopting the proposed rule. Nothing further was heard from the signers, and the rule was adopted. It went unchallenged by anyone until Western raised the issue in this case on appeal to the district court three years later.

In our opinion, there is no merit to Western's challenge to the validity of the rule making process. In any event, this issue was raised for the first time on appeal from the administrative action. Section 82-4216(1), R.C.M. 1947, prohibits the raising on appeal of any question not raised

before the administrative agency except the validity of the statute under which the agency is proceeding, unless it is shown to the satisfaction of the Court that there was good cause for failure to raise the question before the administrative agency.  Good cause was not shown here.

The order of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 14 -