No. 14653

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

BOARD OF TRUSTEES OF BILLINGS
SCHOOL DISTRICT NO. 2 of Yellowstone
County, Montana,

                Petitioner,

    -vs-

STATE OF MONTANA ex rel BOARD OF
PERSONNEL APPEALS AND BILLINGS EDUCATION
ASSOCIATION, a Montana non-profit corporation,

                Respondent.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
             Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Petitioner:

        Longan & Holmstrom, Billings, Montana
        James Capser argued, Billings, Montana

    For Respondent:

        Hooks and Budewitz, Townsend, Montana
        Patrick F. Hooks argued, Townsend, Montana
        Hilley and Loring, Great Falls, Montana
        Emilie Loring argued, Great Falls, Montana
        Jerry Painter, Helena, Montana

_____

               Submitted:  September 21, 1979

               Decided: DEC 24 1979

Filed:  DEC 24 1979

                        _Thomas J. Kearney_____
                                     Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The Board of Trustees of Billings School District No. 2 appeals from the order of the Yellowstone County District Court denying the School District's petition to modify the order of the Board of Personnel Appeals. The BPA's order determined that District No. 2 had committed an unfair labor practice by coercing its teachers to surrender their right to strike.

The BPA's order stated in part that the District shall not issue individual contracts which include terms of employment not yet adopted in a master agreement. The District staunchly defends its right to issue individual contracts to teachers after contract negotiations have reached an impasse, and it fears that the BPA order, if upheld, will interfere with its ability to keep its schools operating when no agreement on a master contract can be reached. Our decision does not concern the District's right to issue individual contracts prior to adoption of a master agreement. We are concerned here with the issuance of individual teacher contracts during the pendency of a lawful strike and hold only that under the facts of this case the District's use of individual contracts to terminate the strike was an unfair labor practice under section 59-1605(1)(a), R.C.M. 1947.

During the first ten months of 1975, appellant District and respondent Billings Educational Association attempted to negotiate a new contract for District teachers. Negotiations were unsuccessful and District schools opened in the fall of 1975 with the teachers working without a contract. On October 2, 1975, the teachers went on strike. Three days later, the District's final offer was rejected and BPA mediators withdrew. With negotiations having ceased, the District mailed a letter with an attached contract to each of its teachers. Each letter stated that the teacher would be replaced unless his or her contract was signed and returned

- 2 -

by October 14, 1975, and he or she returned to work by October 15, 1975.

On October 10, 1975, BEA filed a complaint with the BPA in which it alleged the District had violated section 59-1605(1)(a)(e), R.C.M. 1947, of the Collective Bargaining Act by its refusal to bargain. In addition BEA's brief contended that the District had coerced teachers by mailing them letters containing a threat of discharge. After conducting a hearing on the charges, a BPA hearing examiner concluded that the District had violated section 59-1605(1)(e) by refusing to bargain, but that the complaint failed to give the District fair notice of the charge of coercion, and thus he could not consider that charge.

The BPA adopted the examiner's finding that the District had refused to bargain, and in addition, concluded that the District had attempted to coerce its teachers into signing contracts and returning to work, thereby interfering with their right to engage in concerted activities including the right to strike.

The District petitioned the Yellowstone County District Court to modify the BPA's order insofar as it ordered the District to cease using individual contracts providing for wages, hours, fringe benefits, or other conditions of employment. The District Court denied the petition and this appeal followed.

The sole issue is whether the District Court committed reversible error in affirming BPA's decision that the mailing of individual contracts was an unfair labor practice under the facts of this case.

The District contends that BEA's complaint failed to give notice of the charge of coercion; that the evidence presented at the hearing before the BPA's trial examiner does not support the conclusion that the District coerced its teachers; and that section 75-6102, R.C.M. 1947, authorizes the District to issue

- 3 -

individual teacher contracts containing terms of employment not already adopted in a master agreement.

The first issue presented by defendant is whether BEA's complaint complied with the requirements of notice for administrative hearings. Section 82-4209(1), R.C.M. 1947, of the Montana Administrative Procedure Act provides that a party to a contested case shall be given an opportunity for a hearing after reasonable notice. Reasonable notice includes "a short and plain statement of the matters asserted." Section 82-4209(2)(d), R.C.M. 1947. The District maintains that it did not receive reasonable notice of the charge of coercion because the complaint did not state that the District had "coerced" its teachers, and did not allege facts which would support such a charge.

The importance of pleadings in administrative proceedings lies in the notice they impart to affected parties of the issues to be litigated at the hearing. Western Bank of Billings v. Mont. St. Banking (1977), ___Mont.___, 570 P.2d 1115/ Davis, Administrative Law Text, (3rd ed. 1972), §8.02, pp. 196-197; Greco v. State Police Merit Board (Ill. C.A. 1969), 105 Ill.App.2d 186, 245 N.E.2d 99, 101. Thus the pleadings are liberally construed to determine whether the charged parties were given fair notice. 73 C.J.S. §120, p. 439; Greco, supra; Glenn v. Board of County Com'rs, Sheridan County (Wyo. 1968), 440 P.2d 1, 4. Fair notice is given if a charged party having read the pleadings should have been aware of the issues which it had to defend. N.L.R.B. v. Johnson (6th Cir. 1963), 322 F.2d 216, 220. See also, Glenn, supra; Deel Motors, Inc. v. Department of Commerce (Fla. C.A. 1971), 252 So.2d 389.

We hold that the District received fair notice that the charge of coercion would be litigated. The complaint charged coercion when it stated that the District had violated section 59-1605(1)(a)(e), R.C.M. 1947. Section 59-1605(1)(a), prohibits

coercion of employees in the exercise of certain rights protected by the Collective Bargaining Act. Among those rights is the right to strike.

The complaint also alleged facts to support the charge of coercion as it stated the District was "attempting to force the teachers to give up legally protected rights." In the same context, the complaint stated that public employees have the right to strike.

The word "coercion" is not a talisman without which the complaint fails. The allegations stated in the complaint were sufficient to inform the District that the issue of coercion would be litigated. If the District still had doubts about whether coercion was an issue, upon request it could have obtained a more definite statement of the charges. See section 82-4209(2)(d), R.C.M. 1947.

The District contends that the BPA's finding that it coercively used individual contracts is clearly erroneous in view of the evidence presented by the entire record. Due to the similarity in the provisions of the National Labor Relations Act and Montana's Collective Bargaining Act concerning this issue, it is appropriate to consider federal cases in interpreting the prohibition against coercion contained in section 59-1605(1)(a), R.C.M. 1947. See Local 2390 of Amer. Fed., Etc. v. City of Billings (1976), 171 Mont. 20, 555 P.2d 507.

Federal cases have established the right of an employer to inform striking employees of his intent to permanently replace nonreturning workers after a specified date. N.L.R.B. v. Robinson (6th Cir. 1958), 251 F.2d 639; N.L.R.B. v. Bradley Washfountain Co. (7th Cir. 1951), 192 F.2d 144, 152-154. The District contends that the individual contracts and attached letters simply informed its striking teachers of what the District had a legal right to do,

namely to replace teachers who refused to return to work after October 15, 1975.

The facts of this case do not support the District's contention. An employer's right to communicate his intent to replace striking workers is not absolute. If the employer's communication is an attempt to interfere with his employees right to engage in concerted activities, then he has committed an unfair labor practice. National Labor Rel. Bd. v. Beaver Meadow Creamery (3rd Cir. 1954), 215 F.2d 247; Cusano v. National Labor Relations Board (3rd Cir. 1951), 190 F.2d 898; See also N.L.R.B. v. D'Armigene Inc. (2nd Cir. 1965), 353 F.2d 406; N.L.R.B. v. Power Equipment Company (6th Cir. 1963), 313 F.2d 438.

The chairman of District No. 2's Board of Trustees testified at the hearing before the trial examiner that the District's letter to its teachers included a deadline because "it was time to bring the strike to a halt if we could." The District's failure to hire replacement teachers after the deadline passed suggests that the District's primary motivation was to halt the strike rather than to keep its schools open. See Dayton Food Fair Stores, Inc. v. N.L.R.B. (6th Cir. 1968), 399 F.2d 153. The BPA's finding that the District coerced its teachers to surrender their right to strike is amply supported by the record.

We note in passing that in resolving this issue, we are dealing with a lawful strike. Union activities that become violent and threaten the public safety are not protected by the constitutional right to free speech or provisions for collective bargaining. 51A C.J.S. §289, p. 67; Clark v. State (Okla. C.C.A. 1962), 370 P.2d 46; Smith v. Grady (5th Cir. 1969), 411 F.2d 181; Stevens v. Horne (Fla. C.A. 1976), 325 So.2d 459. See also, Great Northern Ry. Co. v. Local G.F.L. of I.A. of M. (D.Mont. 1922), 283 F. 557.

The District's final contention is that State ex rel. BEA

v. District Court (1974), 166 Mont. 1, 531 P.2d 685, and section 75-6102, R.C.M. 1947, authorize the issuance of individual teacher contracts even though a master contract has not been adopted.

In State ex rel. BEA, this Court held that nothing in the Professional Negotiations Act for Teachers (formerly section 75-6115 through 75-6128, R.C.M. 1947) required District No. 2 to adopt a master agreement with BEA before issuing individual teacher contracts. In 1975, the legislature repealed the Professional Negotiations Act and placed teachers under the Collective Bargaining Act. State ex rel. BEA did not concern a charge of coercion or interpret the teachers' rights under the Collective Bargaining Act to participate in strikes. It is not relevant to the present dispute.

Section 75-6102, R.C.M. 1947, requires teachers to be employed by contract. The District contends that the legislature's failure to repeal section 75-6102, R.C.M. 1947, after placing teachers under the Collective Bargaining Act demonstrates the legislature's intent to authorize the issuance of individual contracts after negotiations on a master contract have reached an impasse.

This argument also misses the point. Whether the District can issue individual contracts after an impasse in negotiations has occurred is not the issue here. This decision concerns only the District's use of individual contracts as leverage to end its teachers' participation in a lawful strike.

Affirmed.

_Frank I. Haswell_
Chief Justice

We concur:

_Gene B. Daly_

- 7 -

_John Conway Harrison_

---------------------------------
Justices

_Frank E. Blair_
Hon. Frank E. Blair, District
Judge, sitting in place of Mr.
Justice John C. Sheehy.


Mr. Justice Daniel J. Shea dissents and will file a written
dissent later.